**Patricia A. BAKER, Plaintiff,**

**v.**

**EMERY WORLDWIDE, a C.F. Corporation, d/b/a Purolator Courier Corporation d/b/a Emery Purolator.**

**No. CA89–1387.**

United States District Court,
W.D. Pennsylvania.

Oct. 28, 1991.

See also 789 F.Supp. 678.

Daniel Ernsberger, Behrend and Ernsberger, Pittsburgh, Pa., for plaintiff.

Richard J. Antonelli, Buchanan Ingersoll, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

In her Complaint, the plaintiff, Patricia A. Baker, brought discrimination claims against the defendant, Emery Purolator (Purolator), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–3, 42 U.S.C. 2000e–5 and 28 U.S.C. 1331, and the Pennsylvania Human Relations Act, 43 P.S. 951. Plaintiff alleges defendant's decision not to hire her as a courier constitutes discrimination in that Purolator engaged in unlawful retaliation and sex discrimination in making its employment decisions.

## BACKGROUND

Plaintiff claims to have been sexually harassed by one of her managers at V.C. Express, a now defunct company, which provided couriers to Purolator's predecessor-in-interest (Emery Worldwide) under a drayage contract. V.C. Express is not a party in this action. Plaintiff brought this matter to the attention of both V.C. Express and Emery Worldwide management and claims that her reporting of these incidents resulted in further harassment and retaliation in the form of special work assignments and being held to different performance standards. Plaintiff additionally maintains that her reports to V.C. Express and Emery Worldwide management of subsequent acts of discrimination and reprisals also went unheeded.

On or about March 26, 1988, Emery Worldwide was purchased by defendant who began trading and doing business as Emery Purolator. Plaintiff and other V.C. Express employees filed job applications with Purolator. Fifty (50) applicants, including plaintiff, interviewed for courier positions with defendant. A total of twenty-nine V.C. Express employees were hired. Of this number, there were twenty-eight males and one female. Plaintiff was not among those hired.

Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission on April 8, 1988. No resolution of her claim was reached within one year of her filing. In her instant Complaint, plaintiff demanded a jury trial for her Title VII and PHRA claims in which she sought compensatory damages, attorney's fees, reinstatement and lawful interest. By the Court's Opinion and Order dated October 2, 1990, defendant's Motion to Strike Plaintiff's Jury Demand Under Title VII and the PHRA was granted in part and denied in part with the Court concluding that plaintiff was only

entitled to a jury trial on her PHRA claim. After three trial days, the jury returned a verdict for plaintiff in the amount of $30,-380.00 together with interest in the amount of $1,822.00.

Before the Court are defendant's Motion for Judgment Notwithstanding the Verdict and its alternative Motion for a New Trial pursuant to Rule 50 of the Federal Rules of Civil Procedure in which the following contentions are raised:

1. Plaintiff failed to present any evidence in respect to her alleged actual loss. Accordingly, the jury did not have any evidence upon which to base its damage finding of $30,380.00 plus interest of $1,822.00;

2. Plaintiff failed to present any evidence that Purolator's articulated reason for its failure to hire plaintiff was pretext for sex discrimination. Accordingly, the jury did not have any evidence upon which to conclude that plaintiff had been discriminated against on the basis of her sex;

3. The Court erred in permitting plaintiff's counsel to argue, in closing, evidence or matters not in the record and theories of liability which were not before the jury;

4. The Court erred by instructing the jury in respect to plaintiff's damage claim and by refusing to instruct the jury to find that plaintiff failed to present any evidence of damage in the form of back pay;

5. The Court erred by refusing to allow testimony of Jack Firich during Purolator's case-in-chief with regard to his consultation with John Hites' preparation of his recommendations regarding the employment of former VC Express employees. The effect of the Court's ruling placed Emery in the position of having to recall Mr. Firich in sur rebuttal to respond to plaintiff's rebuttal, thereby allowing plaintiff's counsel to argue in closing that Emery's testimony had been manufactured over the lunch break;

6. The Court erred by allowing a jury trial of plaintiff's claim of sex discrimination when plaintiff sought only equitable relief;

7. The Court erred by permitting plaintiff's counsel to unfairly prejudice the jury by:

(i) Arguing that Firich's testimony was manufactured over the lunch break when he knew it had only been excluded based upon the Court's sustaining of his objection to the testimony;

(ii) Arguing that Purolator's conduct violated federal and state labor law; and

(iii) Arguing that Purolator had enhanced only plaintiff's interview score sheet and not the score sheets of other applicants. More specifically, plaintiff's counsel did not have sufficient copies of plaintiff's Exhibit No. 1 and therefore requested a copy from Emery's counsel at the time he wished to introduce the document into evidence during his case-in-chief. During the exchange, Emery's counsel indicated to plaintiff's counsel his thought that the copying process had enhanced many of the personnel documents.

## STANDARDS OF REVIEW

Motions for a new trial require the exercise of discretion by the Court, whose "duty is essentially to see that there is no miscarriage of justice." 6A Moore's Federal Practice para. 59.08[5] at 59–160; *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 475 (3d Cir.1973). The jury's verdict may be vitiated only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because it may have reached a different conclusion.

■ To grant a motion for Judgment n.o.v., the Court must find as a matter of law that the plaintiff failed to adduce sufficient evidence to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a Motion " ... may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A Moore's Federal Practice para. 50.07[2] at 2356. Moreover, the evidence and the inferences therefrom

should be viewed in a light most favorable to the plaintiff, the verdict winner. *Thomas v. E.J. Korvette*, 476 F.2d 471 (3d Cir. 1973).

In short, the question is whether considering all the evidence, together with all favorable inferences, there is a total failure or lack of evidence to prove a necessary element of the plaintiff's case. *Larsen v. International Business Machines Corp.*, 87 F.R.D. 602, 606 (E.D.Pa.1980). The burden of showing prejudicial error rests on the moving party. *E.G. Skill v. Martinez*, 91 F.R.D. 498, 504 (D.N.J.1981), aff'd., 677 F.2d 368 (3d Cir, 1982).

■ The elements of a *prima facie* case alleging discriminatory treatment in a Title VII case are set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court stated that the plaintiff in a Title VII case has the burden of showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." [1]

■ Once the plaintiff establishes a *prima facie* case, a presumption is created

---

**1.** While the Court in *McDonnell Douglas* articulated plaintiff's Title VII burden in the context of racial discrimination, it has been determined that this same standard is applicable in the case of a sex discrimination claim. *Bryant v. Intl. Schools Services*, 675 F.2d 562 (3d Cir.1982), citing *Kunda v. Muhlenberg College*, 621 F.2d 532 (3d Cir.1980). Moreover, the proof required to establish a *prima facie* case of discrimination in a PHRA claim is identical to the proof required under Title VII. *See Com. Dept. of Transp. v. Com., Pennsylvania Human Relations Com'n*, 84 Pa.Commwlth. 98, 480 A.2d 342, (1984), remanded, 510 Pa. 401, 508 A.2d 1187, (1984).

**2.** In *Roebuck v. Drexel University*, 852 F.2d 715, 717 (3d Cir.1988), the Court opined that we should follow the great weight of authority in other circuits that apply the principle of collateral estoppel and jury supremacy to preclude a trial court from entering a judgment on a Title VII claim at a variance with the jury's findings in a concurrently tried section 1983 claim.

---

that the employer unlawfully discriminated against the employee. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

"The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason. The defendant need not persuade the Court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."

*Id.* at 254–255, 101 S.Ct. at 1094–95.

Preliminarily, we are satisfied that plaintiff presented a *prima facie* case of discrimination under the Pennsylvania Human Relations Act and Title VII.[2]

In response to the shifting burden, defendant maintains plaintiff was not as qualified as others who applied for employment for the following reasons: (1) plaintiff had a relatively low interview score; (2) plaintiff had a negative recommendation from her former employer, V.C. Express; and (3) as reported by Laura Lawrence through the testimony of Kaczorowski, plaintiff was disruptive at work on two occasions.

Specifically, the *Roebuck* Court wrote that a trial judge ... "should not be allowed to ignore a considered decision of a jury merely because the judge views issues differently, or otherwise the Seventh Amendment right to a jury trial would be significantly attenuated." *Id.* at 737.

Recently, the Court reaffirmed its position in *Roebuck* in the case of *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990) when it wrote, ... "in all issues which are common to a claim tried simultaneously to the bench and to the jury, the Court is bound by the jury's findings."

The principal aim of Title VII and the PHRA is to protect employees from any form of disparate treatment because of, *inter alia*, sex. Moreover, under Title VII and the PHRA, a *prima facie* case of discrimination, the presumptions which arise and the shifting burdens of proof are analogous. Accordingly, the Court will proceed with its analysis of defendant's post trial Motions as to the jury's verdict in plaintiff's PHRA claim under Title VII.

With this rationale in mind, we will now consider the evidence adduced at trial viewed in a light most favorable to the verdict winner.

I. *Whether Plaintiff failed to Establish The Pretextual Nature of Purolator's Reason for Discharge*

Plaintiff, Patricia A. Baker has a High School equivalent education having completed her G.E.D. in 1970. In January of 1986, plaintiff was hired as a courier by V.C. Express to deliver overnight packages for Emery Worldwide. In her capacity as a courier, plaintiff sorted and loaded the packages on her van and delivered the same to customers on her designated route in the areas of Robinson Township, Crafton, Neville Island, McKees Rocks, Belleview and Sewickley, Allegheny County. Plaintiff also provided other services to V.C. Express all of which essentially involved driving company vans. Plaintiff did not operate any vehicles requiring special skills or licensing.

In October of 1987, V.C. Express began a monthly driver's incentive program designed, generally, to financially reward drivers for their overall safety and performance. Specifically, drivers were rated on such areas as accident/citation free driving, absenteeism, tardiness, and a job-related procedure known as wanding.[3] This program ended in March of 1988. In all but one month, plaintiff received perfect scores and, thus, the full financial benefit of the program.

On March 24, 1988, V.C. Express was purchased by Purolator. Plaintiff, along with forty-eight (48) men and one (1) other woman applied for positions with defendant. The fifty (50) applicants were competing to fill twenty-eight (28) positions. Each applicant was interviewed and scored on a scale of one to ten. Under this ten-point system, the applicants were evaluated with an eye toward the following criteria: (i) flexibility, (ii) communication skills, (iii)

energy level, (iv) work experience and (v) sharpness. As a result of these interviews, twenty-eight males and one female were hired. The female hired by Purolator possessed a special license that permitted her to operate a tractor trailer.

With a total point score of seven (7), plaintiff was deemed unqualified and was not among those hired by defendant despite having superior or similar driving and overall performance records over many of the V.C. Express drivers ultimately employed by defendant.

The evidence established that two V.C. Express drivers, Don Fleming and Dwight Taylor, both with scores of seven, were hired. Two other V.C. Express drivers, namely Paul Dopler and Ed Frank, were hired with respective scores of four and six.

The evidence also established that driver safety was an important consideration of defendant. Plaintiff had an exemplary driving and safety record which was more favorable than that of Don Flemming, whose application indicates that he filed a vehicle accident report in March of 1988.

Plaintiff's application indicated that she had no moving violations, no accident reports and that her license had never been suspended or revoked. Notably, the evidence showed that three males who had received higher scores than plaintiff and had been hired by defendant, reported driving and accident infractions with at least one having been convicted of driving while under the influence (DUI).

On her application, plaintiff indicated with a check mark that she would work nights. However, she placed a question mark next to her check mark since she preferred to work days. The evidence shows that plaintiff's reservation was read with considerable concern by Purolator since, defendant believed, it showed a certain inflexibility on plaintiff's part. On the

---

**3.** Wanding is a method by which the courier, virtually instantaneously, tracks and retrieves information concerning the identity and location of its freight/packages.

By way of explanation, Plaintiff testified on recross that "all work sheets that were filled out,

freight delivered, the lading bills, all that came from Emery. It was also returned back to Emery. We used what you call a wand to scan the material. That information went back to Emery's computer."

other hand, Ed Frank was hired without having answered the question of whether or not he would accept night-work.[4]

As suggested by the testimony of Robert P. Kaczorowski, defendant's Area Industrial Engineer who, at the time in question, played an integral role in the decision not to hire Baker, it was plaintiff's reticence over accepting a night-time assignment that contributed largely toward Purolator's decision not to offer her employment.

Additionally, a matter of some dispute at trial was whether plaintiff received a favorable recommendation from her previous employer. While it is defendant's position that the evidence showed that plaintiff received a negative recommendation from John R. Hites, her V.C. Express route supervisor, and that no one who received such a recommendation was hired regardless of their interview score, plaintiff introduced into evidence a letter she received from Hites, in which he gave her laudatory marks for performance and safety.[5]

With regard to the unfavorable reports of Laura Lawrence, to the extent that they served as a legitimate basis for defendant's decision not to hire plaintiff, there was sufficient evidence in the record to create a jury question as to whether Ms. Lawrence's observations were properly made much less fairly relied upon.

Laura Lawrence, the individual formerly in charge of personnel for Emery Worldwide and presently serving in the same capacity for defendant, was not called as a witness.[6] The evidence proffered at trial concerning Lawrence's observations of plaintiff behavior was introduced via the testimony of Robert P. Kaczorowski, who during the relevant time frame, *inter alia,* was responsible for driver productivity.

Kaczorowski testified that in addition to himself, Don Cain and Laura Lawrence were responsible for hiring couriers. At the time of trial, Don Cain no longer worked for defendant and was not called to testify since efforts to locate him were reportedly unsuccessful.

With Lawrence and Cain unavailable to testify, Kaczorowski testified that (i) he was not present when Cain conducted his interview of plaintiff and (ii) he was uncertain as to how the five categories (flexi-

---

**4.** Frank applied for the position of dockworker. There is no indication in the record that such a position would negate the need to answer the question of whether or not the applicant would accept night work.

**5.** The letter in question reads as follows:
TO WHOM IT MAY CONCERN:
  This letter is to introduce and recommend Patty Baker to any prospective employers.
  I had the pleasure of working with Patty as her supervisor at V.C. Express (the drayage unit for Emery Worldwide Air Cargo) for over two years. During that period Patty set and maintained the highest standards of work in quality and quantity. Her diligence and persistence resulted in consistently meeting delivery deadline commitments that on many occasions seemed impossible.
  Patty's sense of responsibility is also reflected in her accident/citation free driving record. This is highly commendable considering the congested area of her run and the pressures that are inherent with air cargo delivery service.
  She was never tardy and the few times she was absent it was for a just cause with ample notification. Her impeccable appearance, sense of humor and outgoing manner won Patty many friends. She was well liked by her coworkers and customers as well. Patti is hard working, dependable, responsible and likeable.

If you have any questions, please feel free to contact me at:
  630 Tenth Avenue
  New Brighton, Pennsylvania 15066
  Telephone: (412) 846–9947.
        Sincerely,
        John R. Hites
        Route Supervisor.
Plaintiff's Exhibit No. 2.

**6.** As to Laura Lawrence's employment status with defendant at the time of trial, defense counsel has represented that Lawrence is currently on a medical leave. Counsel further reported his belief that there was a break in employment.

  Defendant had the last known addresses for Laura Lawrence and Don Cain, the area Human Resources Manager, and provided the same to plaintiff's counsel prior to trial. Both parties represented they were unable to make contact with either Lawrence or Cain. The Court did not rule that Lawrence or Cain were unavailable pursuant to Rule 804 of the Federal Rule of Evidence. However, on other grounds, the Court permitted the introduction of certain evidence related to observations made by Lawrence and Cain which impacted on defendant's hiring determinations.

bility, communications skills, energy, work experience and sharpness) was weighed by the interviewers.

Based upon our view of Purolator's less than uniform application of its ten-point scoring system, the conflicting recommendations given on plaintiff's behalf by the same individual, and the uncertainty demonstrated by defense witness Kaczorowski surrounding the criteria and methods used in the hiring process, we are persuaded the evidence was sufficient for the jury to conclude (i) that Purolator's hiring practice in this instance was not gender neutral, and (ii) that plaintiff established the pre-textual nature underlying Purolator's decision not to hire her.

II. *Whether Plaintiff Failed to Present Any Evidence of Actual Loss Which Would Entitle Her To Back Pay And Further Failed To Meet Her Obligation To Mitigate Damages*

■ Defendant argues plaintiff failed to present any evidence of actual loss and is, therefore, not entitled to the damage award of $30,380.00 plus interest. Central to its position is that the remedy must be sufficiently tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices. *See Sure–Tan, Inc., v. National Labor Relations Board,* 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). Plaintiff contends the calculation of her lost wages can be based upon the wages and hours worked by one of the men who applied for and received one of the jobs for which she applied.

In *Wooldridge v. Marlene Industries Corp.,* 875 F.2d 540 (6th Cir.1989), the Court, noted that back pay should always be awarded absent the existence of exceedingly rare special circumstances. Quoting *Rasimas v. Michigan Department of Men-*

*tal Health,* 714 F.2d 614 (6th Cir.1983) the Court writes: "Back pay should be awarded in Title VII cases even where the precise amount of the award cannot be determined," with any ambiguities being resolved against the discriminating employer. *Id.* at 628. *Also, See Marable v. Walker,* 704 F.2d 1219 (11th Cir.1983).

The evidence adduced at trial regarding wages can be summarized as follows:

1. V.C. Express drivers began working for Purolator on or about March 26, 1988.

2. The parties have stipulated that the former employees of V.C. Express who were hired by the defendant received the following rates of pay:

| First Six months: | $6.32 per hour |
|---|---|
| 7th month to 12th month: | 8.44 per hour |
| 13th month to 24th month: | 8.63 per hour |
| 25th month through termination of the inhouse courier guard services by the defendant | 8.87 per hour |

3. Former V.C. Express and Purolator courier, Mike Haboush, testified that he worked sixty-one (61) hours his first week with defendant, then fifty (50) hours his second week before averaging thirty-five (35) to forty (40) hours per week. His testimony indicated that the greater number of hours in the earlier stages of his work was necessary in order for him to learn his new route which took him to New Castle, Pa. Haboush testified that he had one of the longer routes assigned by Purolator.[7]

4. Haboush testified that his yearly earning were as follows:

| 1988: | $10,841.00 |
|---|---|
| 1989: | 9,885.00 |
| 1990 (through August) | 7,600.00 |

The Court charged that while back pay cannot be awarded for more than three years prior to the plaintiff's Complaint of discrimination to the Pennsylvania Human Relations Commission, and that while the period for back pay can be less, an award of back pay in this matter could not be for

---

7. The record is devoid of any evidence which indicates that V.C. Express drivers were interviewed by Purolator with the aim of assigning these drivers to their V.C. Express routes. Therefore, there is no basis by which the actual number of hours that plaintiff (or any employee) would have worked could be precisely determined if our focus is limited to the time defendant was conducting its interviews.

more than the period from March 26, 1988 to the date of the verdict.

Given the damage parameters set forth by the evidence, and the Court's charge, we are satisfied that the evidence sufficiently informed the jury of plaintiff's potential earnings. Moreover, in light of the broad remedial purposes of Title VII and the PHRA, it cannot now be said that the jury's award was unreasonable since it appears likely that plaintiff's back pay award was reasonably based upon the position she should have been offered, but for the discriminatory practice. *See Jackson v. United States Steel Corp.*, 624 F.2d 436 (1980).

Defendant also argues plaintiff failed to meet her obligations to mitigate damages in that she was not reasonably diligent in seeking other employment.

Title VII imposes on plaintiff a duty to mitigate, requiring any interim earnings and amounts earnable through reasonable diligence by plaintiff to be set off against the back pay otherwise awardable. 42 U.S.C. § 2000e–5(g). Also, *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982). The relevant language found in Title 42 U.S.C. § 2000e–5 reads:

> "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

The issue of back pay in this case was submitted to the jury as was the question of whether plaintiff met her statutory obligation of mitigating her losses.

■ Because the defense of mitigation of damages is an affirmative defense, defendant has the burden to prove by a preponderance of the evidence that plaintiff failed to mitigate her damages. *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir.1986). To this end, defendant must prove (i) that plaintiff's damages in the form of back pay could have been avoided, and (ii) plaintiff failed to exercise reason-

able diligence in seeking a job substantially equivalent to the one she was denied.

■ On the issue of mitigation, Purolator offered the testimony of William Ceriani, a labor market analyst with the Pennsylvania Department of Labor and Industry, Bureau of Research and Statistics, to establish regional employment and economic conditions and demographic data for southwestern Pennsylvania. Specifically, Ceriani testified as to the number of job options available in the Pittsburgh labor market in the most recently finished three fiscal years for the positions of secretary, clerk-typist, waitress, bartender, and nurse's aide. While these were positions which plaintiff testified she had held in years past, there was no testimony regarding the availability of the same or comparable work as that of a courier guard.

Plaintiff's employment history following March 28, 1988, can be summarized as follows. Plaintiff did not find employment for a period of approximately three months in 1988, though she did make country dolls for a profit of $150.00. Her job pursuits through October 9, 1989, included calling DHL, Federal Express, First Courier and filing an application with the Ground Round restaurant.[8] Thereafter, plaintiff filed three applications with Duquesne Light Company, and applications with Swisher International, J.W. Halls and Gregg Temporary Services. Plaintiff also testified that her resume, in the form of an application, was on file with the Pennsylvania Unemployment Office.

From this evidence, we conclude that plaintiff's efforts to secure employment were sufficient to place the issue of mitigation before the jury and that the jury's verdict in relation to back pay, was consistent with the mitigation evidence. This is particularly evident when the same is viewed in tandem with Purolator's evidence regarding job opportunities which, we note, failed to identify the availability of either the same or comparable work to that of a courier guard.

---

**8.** DHL, Federal Express, and First Courier are courier services employers that provide similar, if not identical, work to the type of employment provided by defendant's predecessor-in-interest.

III. *The Court Erred In Permitting Plaintiff's Counsel To Argue In Closing Arguments Evidence On Matters Not In The Record, To Fabricate Testimony And To Argue Theories of Liability Not before The Jury*

The prejudicial impact of plaintiff's counsel's remarks are raised in the following three instances.

1. Defendant notes that this is a case concerning disparate treatment and yet plaintiff argued disparate impact to the jury in his summation to the jury. Specifically, plaintiff's counsel argued:

"How many women do you know who are 18–wheel truck drivers or move heavy freight or heavy products? We know of one, and we may know of more. Without .. is that, inherently discriminatory when he's talking about, I'm going to base it on finding people with these characteristics; isn't that inherently discriminatory, because there are so few women with those traits?"

2. Defendant argues plaintiff's counsel was impermissibly permitted to argue standards applicable to a National Labor Relations Act case over defendant's objections. Specifically, counsel argued:

"The other information had to do with Patricia baker having a [sic] participated in wage and hour claim and demand along with other employees. Some of you are union people, and you're not asked to put aside your common sense. It is not permissible and legitimate to pick on people because they have demands of wages and hours."

3. Defendant argues the Court erred by allowing plaintiff's counsel to fabricate testimony by arguing the following in his summation to the jury:

"We have the testimony of Laura Lawrence. She wasn't here. We have some idea of what she was saying. She said that Patricia Baker and some other [people were disruptive troublemakers; they

were demanding information about wages and hours. However, she said that about Patricia Baker, but didn't say it about the other men when they applied. Mr. Kaczorowski tells us they identified Patricia Baker, but not those other men. Is that a difference in treatment between men and women?

We also have a .. the Hites recommendation. Now, when he prepared his roster or listing of preferred people and less preferred people, when he got on the stand and gave his direct testimony for the first time he said that he preferred men who had a job class history of Class 3 licenses, freight work, and heavy, heavy loading.

"Disparate Impact"

Defendant contends that because the Court failed to sustain defendant's objection or to cure the remarks in it charge to the jury, reversible error was committed warranting a new trial.

Not every improper or poorly supported remark made in summation can be said to irreparably taint the proceedings. What the Court must consider is whether counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury. *Smith v. National R.R. Passenger Corp.*, 856 F.2d 467 (2nd Cir.1988).

██ The Court has considered the summation of plaintiff's counsel in the context of all of the evidence. We are satisfied that very little confusion, if any, was caused by counsel's remarks. There was, as defense counsel points out, no evidence of disparate impact in this case. In fact, all of the testimony was tailored to address plaintiff's disparate treatment theory. Any misconceptions created by counsel's summation would have been eliminated by the Court's charge which called upon the jury to consider the evidence in light of the disparate treatment formula set forth in *McDonnell Douglas, supra.*[9]

---

**9.** The Court determined the proper standard in this case was disparate treatment under the *McDonnell Douglas* formula, and not disparate impact. As such the Court charged, in pertinent part:

"Even if the plaintiff cannot prove by direct evidence that the defendant intentionally discriminated against her because of her sex, you may nevertheless find that the defendant intentionally discriminated against the plaintiff be-

Finally, even if we assume that counsel's summation departed from the evidence in the record, defendant was not significantly prejudiced by his remarks, particularly in light of the Court's repeated instructions admonishing the jury that statements of counsel were not evidence.

IV. *The Court Erred In Refusing To Allow Certain Testimony During Emery's Case–In–Chief*

During Purolator's case-in-chief, Jack Firich was called as a witness. At side bar, counsel gave an offer of proof that Firich was plaintiff's dispatcher at V.C. Express, that plaintiff, on several occasions, refused to do certain work upon his request, and that he assisted Hites in preparing plaintiff's recommendation that was given to defendant. Plaintiff's counsel objected on the grounds of relevancy and the Court sustained his objection as to Firich's discussing his experiences with plaintiff. The Court's ruling specifically excluded any evidence that Firich told plaintiff to do certain things and she refused.

Defendant argues the evidence should have been admitted in that it provided another non-discriminatory reason for not hiring plaintiff.

Counsel recalled Firich to testify regarding plaintiff's alleged inflexibility when asked by him to perform additional duties. While the Court had previously sustained an objection to this line of questioning, it was permitted in this instance because the Court concluded that plaintiff had opened the door to the issue of plaintiff's flexibility.

In this light, the following questions were asked:

Q. Did you ever have occasion to ask Patti Baker to perform responsibilities outside her standard route.

A. Yes.

Q. ... And would you say once a week, once every two weeks, once a month, once every six months, how often would you make such a request of her?

A. Maybe once every two weeks.

Q. And what was her response?

A. "I can't."

N.T. at 454–455.

Any error that could be assigned to the Court's earlier sustaining of objections to this line of question is rendered harmless since defendant was permitted to introduce this testimony at a later point in the trial.

Defendant also posits it was error for the Court to permit plaintiff's counsel to argue to the jury that certain testimony was manufactured over the lunch break to offset testimony presented earlier in the day.

The statement of plaintiff's counsel to which defendant assigns prejudicial error reads as follows:

Mr. Hites in his first appearance on the stand said people were given better standing based on whether they were freight drivers, heavy duty drivers, and class 3 licensees. He also included, he gave preference to a Navy person. But the—is that a legitimate job qualification, and should he be giving references on their History, or should he be giving references on their work. If they do good work why is he giving references based on their history?

Now, after he did—after he was on the stand he came back after lunch for redirect. And after lunch he added, and Mr. Firich added some new qualifications for why Patricia was not hired. They said, first of all, Patricia Baker didn't sign up for voluntary work on Saturdays. Is that reason—does that make her a less capable employee? Secondly, they said did she, did she respond to special delivery requests? And they said occasionally she, she said, no, I won't do it. Now,

cause of her sex if you find by a preponderance of the evidence that each of the following four statements is true:

1. That she was within the protected group, that is, that she is a female. I instruct you that you must find plaintiff to be a female.

2. That she applied for employment, but has not been hired by Emery. I instruct you that

you must find plaintiff applied for employment with but was not hired by Emery.

3. That she, the plaintiff, was qualified for the position for which she applied.

4. That the defendant sought someone else with similar qualifications to perform the work.

the—when they asked her to do special delivery requests and she was available to do it, then asked her, they asked her nine out of ten times.

Now, when somebody else was—when she was not available to do it there must have been some other man they asked nine out of ten times, or they may have distributed that according to who had hours, but when she was on the job herself, they asked her to do it nine out of ten times.

Now, is it unreasonable and is it inflexible to say, you know, I've done my route for the day guys; can't I not do it today? Is that unflexible (sic)? *In fact, that's something they thought up after lunch.* (emphasis added)

N.T. of summations at 43–44.

■ The Court permitted both counsel considerable latitude in making closing argument to the jury. As a matter of course, the jury was specifically cautioned by the Court not to give either counsels' argument any evidentiary weight. Upon considering the context in which plaintiff's counsel's remarks were made, we are satisfied that the Court's admonition defeats any prejudice that could conceivably have resulted from his remarks.

#### "NLRB Standards"

While counsel may have been guilty of a poor choice of words, his summation in this regard falls short of creating the level of prejudice that would require this Court to grant a new trial. Though we find that no prejudice resulted from counsel's remarks, we again take the position that any possible prejudice that may have been visited upon defendant was insignificant and harmless, particularly in light of the Court's instructions admonishing the jury that statements of counsel were not evidence.

#### "Fabricated Testimony"

While we agree that plaintiff's counsel did not in his summation recite the testimony in question verbatim, a liberal reading of counsel's statement leads us to conclude that his words, though they may have been better chosen, were not prejudicial.

Plaintiff testified that while with V.C. Express, she and three men, one of whom was hired by defendant, were on the dock talking with one another when one of the men questioned Laura Lawrence about wages. Plaintiff testified that she did not take part in these discussions. Defense witness Kaczorowski testified on cross that the only disruptive worker reported to him by Lawrence concerning this incident was plaintiff.

It was for the jury to decide whether to believe the testimony of plaintiff or Kaczorowski as it relates to the occasion in question. Plaintiff's counsel's remarks simply invited the jury to decide whose testimony is believable.

On the matter of counsel's attempt to quote certain comments of defense witness Hites, there is no dispute that Hites did not testify that he preferred to hire men with Class 3 licenses. However, immediately after plaintiff's counsel made his statement and opposing counsel objected, the court noted, for the third time during the closing arguments up to that point, that ... "this is argument, and the jury, while you may consider the argument, you're not bound by it, and it's for you to decide the facts on the evidence as you recall the evidence."

Once again, the Court is satisfied that this admonition eliminated any taint or unfairness that may have resulted from plaintiff's counsel's choice of words and that the request for a new trial is unwarranted.

V. *The Court Erred By Allowing A Jury Trial Of Plaintiff's Claim of Sex Discrimination When Plaintiff Sought Only Equitable Relief*

This issue has been fully addressed in the Court's Opinion entered in this case on October 2, 1990. Accordingly, no further review or disposition is necessary.

Defendant's Motion For Judgment Notwithstanding the Verdict and its Alternative Motion For A New Trial is DENIED.

An appropriate Order will be entered.