953 F.2d 1351
 68 Fair Empl.Prac.Cas. (BNA) 779,
58 Empl. Prac. Dec. P 41,324, 22 Fed.R.Serv.3d 193
 Theresa BILLINGSLEY, Plaintiff-Appellee,
Lila Fuller, Pamela French, Marilyn Salter, and Margie
Shepherd, Plaintiffs-Intervenors-Appellees,
v.
JEFFERSON COUNTY, Defendant-Appellant.
Jefferson County Personnel Board, Defendant.
 No. 91-7079.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 19, 1992.
 
 1
 Charles S. Wagner, Jeffrey M. Sewell, Asst. County Attys., Jefferson County, Birmingham, Ala., for defendant-appellant.
 
 
 2
 James Mendelsohn, Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Northern District Alabama.
 
 
 4
 Before ANDERSON, Circuit Judge, CLARK*, Senior Circuit Judge, and BROWN**, Senior District Judge.
 
 WESLEY E. BROWN, Senior District Judge:
 
 5
 Plaintiffs-appellees brought this action against Jefferson County, Alabama, to secure protection, and to redress deprivation of rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq. The plaintiffs were all employed as housekeepers at defendant's Jefferson County Home facility. Each of the plaintiffs was discharged for the articulated reason of neglect of duty related to excessive absenteeism. Plaintiffs are black persons. Each plaintiff contended that she was fired because of her race and sought to clear her employment record of the charge of "neglect of duty," and plaintiffs Billingsley and French sought reinstatement and back pay.[1] Plaintiffs Fuller and Salter asked for back pay; and all plaintiffs sought interest, attorney fees, and costs. The district court in a memorandum opinion and final judgment granted the plaintiffs relief and permanently enjoined the defendant, commissioners, officers, agents, employees and those in active concert or participation with them from discriminating against the plaintiffs because of their race in the application of the attendance/absenteeism policy.
 
 
 6
 Jefferson County in its appeal first contends that "(t)here is no cause of action under Title VII[2] where both plaintiff and defendant are of same race and color." This contention is totally without merit. Title VII "makes it an unfair employment practice for an employer to discriminate against any individual with respect to hiring or the terms and conditions of employment because of such individual's race, color, religion, sex or national origin: ....." Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 645, 109 S.Ct. 2115, 2118, 104 L.Ed.2d 733, 744 (1989).
 
 
 7
 The fact that Commissioner Davis, the Jefferson County Commissioner of Health and Human Services who supervised the county home where the plaintiffs were employed, was a black man does not make him the employer. The employer is Jefferson County, the only defendant-appellant in this case. The Jefferson County Personnel Board was made a party in the district court for Federal Rules of Civil Procedure 19 purposes only and has not appealed. The county's claim that because Commissioner Davis is black, the defendant Jefferson County must be considered "black" for the purposes of this suit is incredible. The presence of a black man in a supervisory or decision-making position in Jefferson County cannot shield the county from liability under Title VII. Cf. In re Lewis, 845 F.2d 624, at 635 (6th Cir.1988).
 
 
 8
 The second contention of the defendant, Jefferson County, is that the trial court made a finding at the trial that Commissioner Davis, a black, was the decision maker in the firing of the all black plaintiffs and fourteen months later in his final judgment found that the commissioner's white subordinates were the decision-makers.
 
 
 9
 The record discloses that during the trial the court made comments and asked questions of the attorneys concerning their positions with respect to the evidence they were submitting to the court. These comments and indeed tentative findings by the court were not decisions which would bind the court when it made its findings and conclusions of law in its "Memorandum of Opinion" and "Final Judgment and Permanent Injunction." At the conclusion of the trial the court asked the attorneys if they had "anything further to offer." When he was advised that they did not, he advised them "All right. I will take the case under submission."
 
 
 10
 The defendant, using the oral comments and "rulings" made during the course of the trial, seeks to have these alleged findings bind the court to sustain its argument that the court's ultimate determinations were clearly erroneous. Citing FirsTier Mtge. v. Investors Ins. Co., --- U.S. ----, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991), defendant contends that if the bench rulings by the court constitute a "decision" for the purposes of appeal under Rule 4(a)(2), Federal Rules of Appellate Procedure, then they must be binding on the court for purposes of entry of final judgment.
 
 
 11
 In FirsTier the court explained that Rule 4(a)(2) does not permit ".... a notice of appeal from a clearly interlocutory decision ... to serve as a notice of appeal from the final judgment." The court went on to state "In our view, Rule 4(a)(2) permits a notice of appeal from a non-final decision to operate as notice of appeal from the final judgment only when a district court announces a decision that would be appealable if immediately followed by the entry of judgment." (Emphasis of the Court, --- U.S. ----, 111 S.Ct. at 653, 112 L.Ed.2d at 753.) None of the district court's comments or "rulings" in the instant case rise to the status of an appealable "decision." FirsTier dealt only with the question of whether the bench ruling made in the case was a "decision" under Rule 4(a)(2).[3] It did not in our opinion create a rule that non-appealable findings of fact, rulings, or conclusions of law made during the course of a trial are binding upon a district court's determination of its final factual and legal conclusions.
 
 
 12
 Here, the district court's memorandum opinion constitutes its findings of facts and conclusions of law. We accept such findings of fact unless we find they are clearly erroneous. Rule 52(a), Fed.R.Civ.Procedure. The district court's findings of fact in this case are distilled from the oral and documentary evidence submitted to the court at trial. These findings and the inferences drawn therefrom by the court are supported by the record in the case. Indeed the defendant does not point to error in the court's specific findings but concludes that the court erred in permitting plaintiffs to recover for "same race or inter-racial discrimination." Defendant bases this contention on the absence of any evidence that the supervisory personnel gave any reason for the discharge of plaintiffs other than absenteeism and tardiness.
 
 
 13
 The district court noted that the plaintiffs were all discharged towards the end of August, 1987 "ostensibly because of their absenteeism/tardiness records." They were all employed by the housekeeping department, part of the county home. In 1987, there were some 410 employees at the county home; 70% of these were blacks. The two major departments of the home were the housekeeping department with 35 to 38 employees and the nursing service department with over 300 employees. The head of the housekeeping department was white, and all others were black. The record discloses that 55% to 75% of the employees of the nursing services department were black and that most of the supervisors at the facility were white. There was an attendance problem in the housekeeping and nursing departments. The absenteeism problem was the greatest with nursing services, sometimes as high as 21% on some shifts. The court found that the "Absenteeism and Tardiness Point System," used to overcome excessive absenteeism by employees which had been adopted by Jefferson County and had been in effect until April of 1987, had been discontinued by Commissioner Davis because it contravened the rules of the Jefferson County Personnel Board. He announced that with the discontinuance of the point system "we will be utilizing the procedures outlined in the Personnel Board Manual." Using the rules of the manual the court found that the plaintiffs had been discharged in violation of the board's own rules. The court noted that the county home's administration had irrationally applied the board's rules and that Commissioner Davis had violated the rules. The court also pointed out that when French was discharged by Commissioner Davis all of her absences were with leave and approved sick leave and that, despite these approved absences, Davis advised French he was going to make her the "guinea pig" as an example to other employees. Davis' action was shown by the record to be upon the recommendation of the head of housekeeping as well as the director of the county home, both of whom were white. Commissioner Davis discharged plaintiff Billingsley for abuse of leave and attendance when all of her absences were valid and excused absences. Davis informed Billingsley that she was to be made an example for the rest of the workers. In doing so, Davis acted upon the recommendations of Billingsley's white supervisor and director. In this factual setting there was further evidence that, at the time the plaintiffs were discharged for absenteeism, a white practical nurse at the county home had an absenteeism/tardiness record at least equal to if not greater than the plaintiffs; but this white employee was only suspended for three days instead of being terminated for conduct which was similar to that of the black plaintiffs.
 
 
 14
 In his conclusions of law under this evidence, the district court properly found that Commissioner Davis imposed on the black plaintiffs unauthorized standards not required of white employees in similar circumstances and that in carrying out his stated goal of making an example of certain plaintiffs, he deprived them of "their right of equal protection or equal treatment without regard to race."
 
 
 15
 Defendant Jefferson County's final contention is that the back pay and interest assessed against the county for and on behalf of the plaintiffs amounts to an impermissible penalty because the trial court did not enter his final judgment for fourteen months after taking the matter under advisement.
 
 
 16
 This issue was never raised in the court below by complying with Rule 59 of Federal Rules of Civil Procedure. Defendant did not file either a motion for a new trial or to amend the judgment, although there was ample opportunity to do so under the rule. Instead the defendant filed an immediate appeal. Defendant asks us to rule that "[t]he assessment of backpay and interest during that period of unreasonable delay (14 months) constitutes a penalty not encompassed by Title VII's remedial or make whole relief provision and is clearly an abuse of discretion." Defendant's reasoning is faulty. It is the plaintiffs who have been injured by the "unreasonable delay" if there was one. The defendant was not required to pay the award or to reinstate the plaintiffs during the period of time of which it complains. It had the use of the money during the 14-month period, and indeed it continues to have the use of the money during this appeal. The issues raised on this appeal are tenuous to say the least.[4]
 
 
 17
 In the case of In re Daikin Miami Overseas, Inc., 868 F.2d 1201, 1207 (11th Cir.1989), this court identified "five exceptions to the general rule that an appellate court will refuse to consider an issue not presented to the trial court and raised for the first time on appeal." We need not review those exceptions again. It is sufficient to note that we find that defendant has not set forth any reason, and we find nothing in the record which would warrant the consideration of this claim.
 
 
 18
 Our review of the record and proceedings in this case supports the findings and conclusions of the district court; those findings are not clearly erroneous, and the judgment is therefore AFFIRMED.
 
 
 
 *
 See Rule 34-2(b) Rules of the U.S. Court of Appeals
 
 
 **
 Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Plaintiffs Salter, Shepherd and Fuller appealed their terminations to the County Personnel Board, and were reinstated to their positions. Plaintiff Salter was later suspended for five days because of a two day absence. Plaintiff French obtained interim employment, but lost over $13,000 in back pay. Plaintiff Billingsley did not appeal her termination to the county board, but the district court found that if she had done so, she would have been reinstated. Billingsley lost over $19,000 in back pay. In the Judgment entered in this action (Record, Item 6), Billingsley and French were awarded reinstatement and back pay, and all plaintiffs received injunctive relief, attorneys fees and expenses
 
 
 [2]
 Public Law 88-352, Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq
 
 
 [3]
 The district court had announced "from the bench that it intended to grant summary judgment for respondent.."
 
 
 [4]
 In Nord v. United States Steel Corp., 758 F.2d 1462, 1472-1473 (11th Cir.1985) this court held that a backpay award should extend to the date of judgment, not to the date of the trial court's oral findings