95 F.3d 1154
 71 Fair Empl.Prac.Cas. (BNA) 736
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Carolyn ROOKS, Plaintiff-Appellant,
v.
GIRL SCOUTS OF CHICAGO, Defendant-Appellee.
 No. 95-3516.
 United States Court of Appeals, Seventh Circuit.
 Argued June 11, 1996.
Decided Aug. 9, 1996.
 
 Before CUDAHY, KANNE and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Carolyn Rooks charges that her employer, the Girl Scouts of Chicago ("Girl Scouts"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., when it did not promote her to one of two newly created Associate Executive Director positions. The district court granted summary judgment in favor of the Girl Scouts, and Ms. Rooks now appeals. Because Ms. Rooks failed to show that the Girl Scouts's reasons for not promoting her were pretextual, we affirm the judgment of the district court.
 
 BACKGROUND
 
 2
 Carolyn Rooks, an African American female born in 1952, has worked for more than twenty years with the Girl Scouts, a non-profit service organization dedicated to serving the needs of girls in the city of Chicago. Ms. Rook's current position is Director of Membership Services, and she has held this position since 1991.
 
 
 3
 Ms. Rooks's direct supervisor is Brooke Wiseman, the Executive Director of the Girl Scouts. Ms. Wiseman is a white female who was born in 1949. As Executive Director, she is responsible for overseeing the overall operation and administration of the Girl Scouts, including fund development, membership development, finance, personnel, the cookie sale, and public relations. Before 1994, Ms. Wiseman directly supervised a management staff consisting of six individuals responsible for various operations: (1) Ms. Rooks, Director of Membership Services; (2) Bernetta Johnson, an African American female born in 1953, who was Director of Membership and Product Sales; (3) Thomas Galassini, a white male born in 1961, who was Director of Finance and Administration; (4) Susan Rakis, a white female born in 1957, who was Director of Membership and Membership Support; (5) Thelma Walker, an African American female born in 1952, who was Director of Communications; and (6) Barbara Vroman, a white female born in 1955, who was Director of Development.
 
 
 4
 In 1994, Ms. Wiseman decided to restructure the Girl Scouts's management staff by creating two new Associate Executive Director positions to oversee the day-to-day operations of the Girl Scouts. The Associate Executive Directors would directly supervise the other members of the management staff. One Associate Executive Director would be responsible for the Girl Scouts's business operations, including fundraising, finance administration, and public relations. The other Associate Executive Director would be in charge of membership, including membership recruitment and retention, product sales, programming, adult development, and activity centers.
 
 
 5
 Ms. Wiseman planned to promote two members of the management staff to fill these positions. At her deposition, she testified that in evaluating the six candidates for promotion, she considered each individual's (1) supervisory effectiveness, (2) ability to work with volunteers, (3) knowledge of the operational areas that the person would supervise, (4) interpersonal skill, (5) ability to accept additional responsibilities, and (6) ability to manage change and function in a fluid and uncertain environment.
 
 
 6
 Ms. Wiseman selected Barbara Vroman for the Associate Executive Director position that would oversee the business operations area of fundraising, finance administration, and public relations. Ms. Vroman had a degree in business supervision from Purdue University, was a member of the National Society of Fundraising Executives, and had attended several fundraising seminars for fund development professionals. Before joining the Girl Scouts in 1992, Ms. Vroman spent six years as the Director of Development for the South Cook County Girl Scout Council and two years as the Director of Development for the Southwest Cooperative Foundation, a service organization for disabled children. Moreover, Ms. Vroman's most recent job performance evaluation was superior to those of four of the other members of the management staff, including Ms. Rooks, and was equal to that of Bernetta Johnson.
 
 
 7
 Ms. Wiseman then named Bernetta Johnson to the other Associate Executive Director position to oversee membership recruitment and retention, product sales, programming, adult development, and activity centers. Ms. Johnson had performed many of these tasks during her fifteen-year-tenure with the Girl Scouts.
 
 
 8
 On July 1, 1994, Ms. Vroman and Ms. Johnson assumed their positions as Associate Executive Directors.
 
 
 9
 In August 1994, Ms. Rooks filed a charge of age and race discrimination with the Equal Employment Opportunity Commission ("EEOC"). The following month, the EEOC dismissed the charge because there was no evidence "to establish a violation of the statutes."
 
 
 10
 Ms. Rooks filed this lawsuit in January 1995, alleging that the Girl Scouts violated Title VII[1] and the ADEA[2] when it failed to promote her to one of the two newly created Associate Executive Director positions. In September 1995, the district court granted the Girl Scouts's motion for summary judgment. Ms. Rooks appeals.
 
 DISCUSSION
 
 11
 We review a grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1402 (7th Cir.1996). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The summary judgment standard is applied with "added rigor in employment discrimination cases, where intent is inevitably the central issue." McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 370-71 (7th Cir.1992).
 
 
 12
 To establish a prima facie case of discrimination for failure to promote under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Ms. Rooks must show that (1) she was in the protected class; (2) she applied for and was qualified for the position sought; (3) the Girl Scouts rejected her for the position; and (4) the Girl Scouts promoted someone from outside the protected group with similar or lesser qualifications than Ms. Rooks. Sample v. Aldi Inc., 61 F.3d 544, 548 (7th Cir.1995). If Ms. Rooks establishes a prima facie case, a rebuttable presumption of discrimination arises, requiring the Girl Scouts to come forward with a legitimate, nondiscriminatory reason for its refusal to promote her. Once such a reason is provided, the presumption of discrimination dissolves, and Ms. Rooks must show that the proffered reason is pretextual. See Fuka, 82 F.3d at 1404. At all times, however, Ms. Rooks bears the ultimate burden of persuading the trier of fact that the Girl Scouts intentionally discriminated against her based upon her age or race. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742 (1993); Weisbrot v. Medical College of Wisconsin, 79 F.3d 677, 681 (7th Cir.1996).
 
 
 13
 The district court assumed[3] that Ms. Rooks had made out a prima facie case of discrimination under McDonnell Douglas, but concluded that the Girl Scouts had satisfied its burden of producing a legitimate, nondiscriminatory reason for choosing not to promote Ms. Rooks; namely, that the two women selected instead of her were better candidates.[4] Turning to the issue of pretext, Judge Kocoras wrote:
 
 
 14
 The Defendant claims, with adequate support in the record, that the decision to promote Ms. Vroman and Ms. Johnson instead of the Plaintiff was due to Ms. Wiseman's belief that the promoted individuals were stronger candidates.... In opposition, the Plaintiff maintains that based upon her experience and educational background, she was "equally or better qualified" to fill either one of the positions....
 
 
 15
 However, the Plaintiff's own assessment of her ability does not prove that Ms. Wiseman's decision not to promote her was pretext for discrimination. The Plaintiff must prove either that the Defendant's pretext was unworthy of credence or that the adverse decision was more likely than not motivated by discriminatory reasons.... The Plaintiff has not offered any evidence which could support either one of these propositions.
 
 
 16
 R. 36, Memorandum Opinion of Sept. 20, 1995, at 14-15 (citations omitted). Finding that Ms. Rooks' produced no evidence to refute the Girl Scouts's proffered reason for not promoting her, the court entered summary judgment in favor of the Girl Scouts.
 
 
 17
 The parties agree that the issue on appeal is whether Ms. Rooks has met her burden of showing that the Girl Scouts's proffered reasons for not promoting her were mere pretext. She may meet her burden either directly by showing that a discriminatory reason likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. Mills v. First Federal Savings & Loan Ass'n of Belvidere, 83 F.3d 833, 845 (7th Cir.1996); Sample, 61 F.3d at 547. Because Ms. Rooks offered no direct evidence of discrimination, we must determine whether she has produced evidence from which a reasonable juror could infer that the Girl Scouts "lied," Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir.1994), or gave a "phony reason" about its proffered business reason for not promoting her. Mills, 83 F.3d at 845.
 
 
 18
 Ms. Rooks produced no such evidence. Her sole argument is that her work history[5] and job performance reviews (some of which date back to 1965)[6] render her the best qualified candidate for the position of Associate Executive Director. She points out, for instance, that she has had more varied work experience and a longer tenure with the Girl Scouts than either Ms. Johnson or Ms. Vroman. The Girl Scouts, however, submitted credible evidence that the decision to promote Ms. Johnson and Ms. Vroman instead of Ms. Rooks stemmed from Ms. Wiseman's belief that the promoted women were stronger candidates. Ms. Rooks counters that she was performing at a level equal to or greater than other employees similarly situated. Self-serving assertions, however, are generally insufficient to raise a question of fact. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir.1994); see also Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992) ("An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability."). "Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter." Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir.1996). As we have noted on many occasions, this court does not " 'sit as a super-personnel department that reexamines an entity's business decisions.' " Mills, 83 F.3d at 846 (quoting Sample, 61 F.3d at 551).
 
 
 19
 Nothing in the record suggests that the Girl Scouts refused to promote her because of her race or her age. The undisputed evidence establishes that of the two women selected for promotion, one (Ms. Johnson) was the same race and in the same protected age category as Ms. Rooks. The undisputed evidence also shows that the June 1993 job performance ratings of the two promoted individuals surpassed those of the remaining candidates, including Ms. Rooks. Moreover, there can be no compelling inference of age discrimination because Ms. Wiseman herself is also in the protected age group. See Marlow v. Office of Court Admin. of New York, 820 F.Supp. 753, 757 (S.D.N.Y.1993) ("if decisionmaker is in same protected class as plaintiff, claims of discrimination become less plausible"), aff'd, 22 F.3d 1091 (2d Cir.), cert. denied, 115 S.Ct. 252 (1994). Ms. Rooks is unable to carry her burden of showing that the Girl Scouts's reasons for not promoting her were pretextual.
 
 
 20
 Finally, the Girl Scouts asks us to sanction Ms. Rooks under Federal Rule of Appellate Procedure 38 for filing a frivolous appeal.[7] Under Rule 38, sanctions are justified "when the result is obvious or when the appellant's argument is wholly without merit." Ashkin v. Time Warner Cable Co., 52 F.3d 140, 146 (7th Cir.1995) (internal quotations and citations omitted). Because we do not regard this appeal to be frivolous, we decline the invitation to impose Rule 38 sanctions.
 
 CONCLUSION
 
 21
 We agree with the district court that the evidence is insufficient to support an inference of age or race discrimination. The judgment of the district court is AFFIRMED. The Girl Scouts's request for Rule 38 sanctions is DENIED.
 
 
 
 [1]
 Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1)
 
 
 [2]
 The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual on the basis of age. 29 U.S.C. § 623(a). The legislation protects workers, such as Ms. Rooks, who are between the ages of forty and seventy. 29 U.S.C. § 631(a)
 
 
 [3]
 Although the district court observed that Ms. Rooks satisfied each of the four elements necessary to prove a prima facie case of discrimination, see Memorandum Opinion of Sept. 20, 1995, at 14, the court appeared to stop short of actually finding that Ms. Rooks had established her prima facie case. Using the subjunctive mood, the court wrote: "[E]ven if we were to conclude that the Plaintiff successfully established her prima facie case, the Plaintiff fails on the issue of pretext." Id. Judge Kocoras's use of the subjunctive tense does not affect our analysis. While the prima facie analysis logically comes first, we may "eschew a mechanistic application of McDonnell Douglas ... and proceed to consider whether [Ms. Rooks] met her burden of showing pretext." Fuka, 82 F.3d at 1404
 
 
 [4]
 At her deposition, Ms. Wiseman testified that she considered Ms. Johnson and Ms. Vroman to be the best candidates according to her performance criteria:
 Q: Miss Wiseman, why did you not select Carolyn Rooks for the position of Associate Executive Director?
 A: I felt that the other two were stronger people for the jobs because of the--I felt in areas of getting along well with volunteers, respect from volunteers, ability to deal with change and uncertainty, interpersonal skills, supervisory skills, that the other two were stronger.
 (R. 29, Ex. A, Dep. of Brooke Wiseman of 7/6/95, at 51-52.)
 
 
 [5]
 The work history that Rooks asks us to consider includes service as Director of Field Operations for the Girl Scouts of Chicago (1987-91), Division Director of Girl Scouts of Chicago (1979-87), Vice President of Administration of the Chicago Urban League (1976-77), Special Assistant to the President of the Chicago Urban League (1975-76), Associate Director of the National Medical Association (1973-75), and Membership Advisor/Area Director/Field Coordinator/Field Advisor to the Girl Scouts (1965-73)
 
 
 [6]
 Rooks argues that Ms. Wiseman's decision not to consider Rooks' job performance reviews before March 1992, when Ms. Wiseman became the Girl Scouts's Executive Director, is pretextual. However, Rooks presented no evidence that Ms. Wiseman considered the pre-1992 performance reviews for any of the candidates. Indeed, all of the candidates were evaluated according to the same six factors. Judge Kocoras properly observed that the performance factors selected by Ms. Wiseman were entirely defensible: "Neither the Plaintiff nor this Court can second guess the factors that Ms. Wiseman utilized in making her decision." Memorandum Opinion of Sept. 20, 1995, at 16. See Palucki v. Sears, Roebuck and Co., 879 F.2d 1568, 1571 (7th Cir.1989) ("An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age.")
 
 
 [7]
 The Girl Scouts also complain that the "dilatory" manner in which Ms. Rooks filed her opening brief reflects bad faith and suggests that she brought this appeal without any reasonable expectation of overturning the district court's judgment. Although Ms. Rooks did miss two filing deadlines (which prompted this court to issue separate orders directing her to show cause why the appeal should not be dismissed for lack of prosecution), a motions panel of this court twice suspended its Rule to Show Cause pending the timely filing of a brief by Ms. Rooks. When Ms. Rooks eventually filed her opening brief on March 8, 1996, the filing was made before the briefing deadline set by this court