Patricia DUNGEE, Plaintiff,

v.

NORTHEAST FOODS, INC.,
et al., Defendants.

Civil Action No. 95–5824 (JEI).

United States District Court,
D. New Jersey.

Oct. 3, 1996.

Law Offices of Stephen G. Console by Stephen G. Console, Diane L. Newman, Haddon Heights, NJ, for Plaintiff.

Martin, Gunn & Martin, P.C. by Burchard V. Martin, Westmont, NJ, Miles & Stockbridge, P.C. by Kathleen Pontone, Baltimore, MD, for Defendants.

## OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

IRENAS, District Judge:

Plaintiff, Patricia J. Dungee ("Dungee"), who unsuccessfully sought employment with defendant, Northeast Foods, Inc. ("Northeast"), has sued Northeast and Judith Dandro ("Dandro"), Northeast's Director of Customer Service, alleging that she was subjected to discrimination on account of her age (50 years old) and sex in violation of Title VII, 42 U.S.C. § 2000e, *et seq*, the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5–12, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). Defendants move for summary judgment, pursuant to Fed.R.Civ.P. 56. Because the plaintiff has failed to proffer any evidence from which a reasonable finder of fact could conclude that the rejection of her employment application was motivated in whole or in part by plaintiff's sex or age, defendants' motion will be granted, and the complaint will be dismissed in its entirety.

## I. BACKGROUND

Plaintiff, a fifty-year-old female, unsuccessfully applied for a position as a customer service representative ("CSR") at Northeast, a company that operates bread bakeries. The CSR serves as a liaison between Northeast and its primary customer, McDonald's. Plaintiff claims that defendants' selection of a "young man," the 33–year–old Victor Desiderio ("Desiderio"), was motivated by plaintiff's age and sex.

In July 1994, Plaintiff applied for the CSR position after reading a newspaper advertisement placed by Dandro, Director of Customer Service. The advertisement stated that the Northeast was seeking "an aggressive individual with 2–3 years experience in customer service and a Bachelor's Degree ..." *See* Pl.Mem.Opp'n Summ.J. at Ex. 3. On August 12, 1994, plaintiff, and all other applicants, were interviewed by Dandro and Anne Nicholson, the outgoing CSR. Dandro had selected plaintiff and 11 other applicants for interviews from a pool of over 200 resumes. Dandro Dep. at 106:17–18. Plaintiff's short resume did not include her birth date, nor was there any other data from which one could determine her age.

During the interview, Dandro described the position to the plaintiff. Dandro told the plaintiff that the job did not require experience in the bakery industry. Dandro Dep. at 237:18–20. Plaintiff told the interviewers that she had 13 years of sales experience and had attended a training course at a baking school in Pennsylvania. Pl.Mem.Opp'n Summ.J. at 8. At the conclusion of the interview, plaintiff alleges that Dandro told her that she would be contacted either by phone or by letter. Pl.Mem.Opp'n Summ.J. at 11. Plaintiff contends, however, that she thought she had been hired at the interview and therefore ceased her job search. Pl.Mem. Opp'n Summ.J. at 12. Defendants deny that Dandro offered the job to the plaintiff. Dandro Dep. at 177:4–5.

By letter dated August 19, 1996, defendants informed plaintiff that she had not been selected for the CSR position. Pl.Ex. 35. Plaintiff then sent Dandro a note requesting an explanation for the decision. Dungee Dep. at 133:8–20. By letter dated August 30, 1994, Dandro responded.[1] Pl.Ex.

---

1. The August 30, 1994 handwritten letter from Dandro to plaintiff reads as follows:

 I enjoyed meeting with you in Philadelphia. It is unfortunate for me and Northeast Foods

 that only *one* position was available. The young man I hired presently works for a bread bakery *in* sales. That fact alone gave him a significant advantage, but he was also well

36. It is the content of the August 30 letter that forms the basis of plaintiff's complaint. The letter informed the plaintiff that a "young man" with experience in the bakery industry had been hired to fill the CSR position.

Desiderio, the "young man" referenced in the letter, had worked for three years at Maier's Bakery, which is an assembly line bakery operation and one of Northeast's competitors. Pl.Mem.Opp'n Summ.J. at 23. Desiderio held the positions of route sales representative and sales representative at Maier's. Desiderio Dep. at 27–28. During his interview Desiderio appeared to be very knowledgeable about the bakery business. Dandro Dep. at 161–62; Nicholson Dep. at 46–47. Dungee never worked in an assembly line bread bakery or in route sales for bread products. Dungee Dep. at 277:8–15. Desiderio had also held several account representative and sales positions prior to his employment at Maier's. Desiderio Dep. at 18–23. At the end of his interview, Dandro also advised Desiderio that she would be contacting him either by phone or by letter. Desiderio Dep. at 86–87. Subsequently, Dandro hired Desiderio.

On February 14, 1995, plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") under Title VII and the ADEA. On August 2, 1995, the EEOC issued a Dismissal and Notice of Rights, concluding that based upon its investigation, neither Title VII nor the ADEA had been violated. Def.Ex. 12. Plaintiff subsequently filed the instant lawsuit. The claims against Dandro individually under the ADEA and Title VII have been dismissed. Plaintiffs claims are based on pretext, or in the alternative, on a "mixed motive" theory.

spoken and pleasant, a good personality match to our customer base.

Your background and work experience was above the average candidate. I had no doubt at all about your blending in with our mixture of customers, as you are a lady with varied life experiences. You were our first choice until we spoke to the young man I mentioned above. When narrowed to two candidates the specific experience won out.

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

If you don't mind, I'm going to keep your resume and address on hand. Even though I feel comfortable with the decision we made Patricia, anything can change. Also, I never know when the status of my department may change.

In closing, you are a very special person and I'm glad our paths have crossed. Perhaps we will meet again.

Sincerely,
Judi Dandro

## III. DISCUSSION

Plaintiff proceeds on two distinct theories of disparate treatment discrimination. First, she asserts that the pretext proof framework is applicable to her claim. In the alternative, she argues that her case is one of "mixed motives," where the decision was motivated both by legitimate and by discriminatory considerations. This court finds that plaintiff has failed to produce enough evidence to withstand summary judgment on the pretext theory. Moreover, plaintiff has failed to produce the "direct" evidence needed to trigger the mixed motive analysis, and, therefore, cannot overcome summary judgment on that theory either.

### A. Pretext

#### 1. Generally

The seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established the burden of proof framework in a Title VII failure to hire case. Although the Court in *McDonnell Douglas* "articulated plaintiff's Title VII burden in the context of racial discrimination, it has been determined that this same standard is applicable in the case of a sex discrimination claim." *Baker v. Emery Worldwide*, 789 F.Supp. 667, 670 n. 1 (W.D.Pa. 1991) (citing *Bryant v. International Sch. Services*, 675 F.2d 562 (3d Cir.1982)) (citing *Kunda v. Muhlenberg College*, 621 F.2d 532 (3d Cir.1980)). *See also Baker v. Emery Worldwide*, 789 F.Supp. 678, 681 (W.D.Pa. 1991).

▇ Courts also apply the *McDonnell Douglas* framework to ADEA and NJLAD claims. *See Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1212 (3d Cir.1995) (applying Title VII standards to the NJLAD); *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 n. 10, 782 (3d Cir.1994) (applying the Title VII standards to the ADEA); *Martinez v. National Broadcasting Co.*, 877 F.Supp. 219, 227 (D.N.J.1994) (applying the Title VII framework to ADEA and NJLAD). Specifically, to prevail on an ADEA claim in a pretext case, the plaintiff must show that "age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." *Miller v. CIG-*

*NA Corp.*, 47 F.3d 586, 588 (3d Cir.1995) (en banc). Plaintiff need not show that age was the sole motivating factor. *See id.*

In order to succeed on a Title VII, NJLAD or ADEA claim, the plaintiff has the initial burden of proving a prima facie case of discrimination. To establish a prima facie case, a plaintiff must show:

> (i) that he belongs to a protected category; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from person of complainant's qualifications.

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994) (quoting *McDonnell Douglas*, 411 U.S. 792 at 802, 93 S.Ct. 1817 at 1824). The burden of production then shifts to the "employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* The employer can satisfy this burden by introducing evidence which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the employment decision. *Id.* Once the employer meets this burden, the burden of production then shifts back to the plaintiff to "show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* The plaintiff must convince the factfinder " 'both that the reason was false, *and* that discrimination was the real reason.' " *Id.* (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519–21, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993)); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

▇ Where plaintiff establishes a prima facie case and the defendant proffers a legitimate nondiscriminatory reason for the employment decision, to defeat summary judgment, plaintiff must come forward with evidence "from which a factfinder could reasonably (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's action." *Fuentes,* 32 F.3d 759, 764 (3d Cir.1994) (citing *Hicks,* 509 U.S. at 510–12, 113 S.Ct. at 2749). The Third Circuit has stated that the plaintiff's evidence "must allow a factfinder to reasonably infer that *each* of the employer's proffered nondiscriminatory reasons ... was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes,* 32 F.3d at 764 (citations omitted). The question is not whether the employer was wise or prudent. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.' " *Id.* (quoting *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 521 (3d Cir.1992), *cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993)).

### 2. *Application*

■ Defendants do not dispute that plaintiff has established a *prima facie* case of discrimination under Title VII, the ADEA, or the NJLAD. Def.Mem.Supp.Summ.J. at 17–18. Plaintiff, a woman over forty, clearly falls within the class of persons protected by the statutes.[2] Plaintiff applied for and was minimally qualified for the job. Despite her qualifications, she was not hired. Desiderio was then interviewed and selected for the position.

■ Defendants have offered a nondiscriminatory reason for the employment decision. Defendants claim that plaintiff was not hired because Desiderio was better-qualified. Def.Mem.Supp.Summ.J. at 18. Defendants do not dispute that plaintiff met the minimum qualifications for the job. Def.Reply

Br. at 2. However, defendants maintain that Desiderio exceeded those baseline requirements, having recently held a job at another bakery company that was very similar to the CSR position at Northeast. *See, e.g., Bell v. Bolger,* 708 F.2d 1312, 1317–18 (8th Cir.1983) (holding that selection of person for promotion because his prior work experience mirrored the duties of the job was legitimate, nondiscriminatory reason for denying the promotion to the plaintiff who was minimally qualified); *Klein v. Secretary of Transp.,* 807 F.Supp. 1517, 1523 (E.D.Wash.1992) (finding that defendants' consideration of plaintiff's lack of recent hands-on experience was legitimate nondiscriminatory reason). Significantly, plaintiff does not provide any evidence contradicting the breadth and depth of Desiderio's experience in the bakery industry.

Because the defendants have articulated a legitimate nondiscriminatory reason, the burden switches back to plaintiff to demonstrate that the defendants' proffered reason was pretextual. Plaintiff has not met her burden of proof under *Fuentes.* In order to show that the defendants' reason is pretextual, plaintiff offers a series of purportedly material issues of fact that plaintiff argues would enable a factfinder to infer discrimination. The court will address each issue raised by the plaintiff in turn.

#### a. The August 30th letter

■ Plaintiff states that August 30 letter creates a reasonable inference of discrimination. Comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim. *See Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1466 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). But, "stray" remarks are insufficient to establish

---

**2.** Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA provides that: "It shall be unlawful to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The ADEA applies to people who are between the ages of forty and seventy. 29 U.S.C. § 631(a). The NJLAD states that: "All persons shall have the opportunity to obtain employment ... without discrimination because of race, creed, color, national origin, ancestry, age, sex, affectional or sexual orientation, marital status, familial status." N.J.S.A. § 10:5–4.

discrimination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 250–52, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) (plurality); *see also Walden v. Watkins,* No. CIV.A. 94–36146, 1996 WL 477020, at *2 (9th Cir. Aug. 21, 1996) (holding that single remark by supervisor that "as a woman you need to sit back and bide your time" was insufficient evidence to survive summary judgment); *Waggoner v. City of Garland,* 987 F.2d 1160, 1166 (5th Cir.1993) (finding that comments that a younger person could do faster work and that plaintiff was an "old fart" were "stray remarks" that were insufficient evidence to raise a genuine issue of material fact to avoid summary judgment); *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir.1990) (finding that decision maker's comment that he chose applicant because he was "a bright, intelligent, knowledgeable young man" was insufficient to raise a triable issue of fact); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314–16 (6th Cir.1989) (finding that "a single, isolated discriminatory comment" by supervisor who said he "needed younger blood" was insufficient to withstand summary judgment). The caselaw, reflects, therefore, that plaintiff must produce more than an isolated comment in order to withstand summary judgment.

Additionally, the letter written to the plaintiff was a courteous response to plaintiff's solicitation of an explanation for why she was not selected. The language and tone of the letter is respectful and sincere. Plaintiff seeks to magnify the use of two words "young man" into an inference of discrimination without any other supporting evidence. To allow this letter to be used in this fashion would not only be inconsistent with established principles of law but also would create perverse incentives for employers to avoid supplying feedback to applicants for fear of being subject to intense judicial scrutiny of every word used. In sum, the letter, standing alone, as it does, is too weak to raise a reasonable inference of discrimination. The remainder of plaintiff's contentions are also insufficient to support her claims.

### b. Paterakis' involvement

■ Plaintiff alleges that Stephen Paterakis ("Paterakis"), President of Northeast, was involved in the decision to hire Desiderio.[3] Plaintiff claims that his involvement casts doubt on the validity of the nondiscriminatory reason offered by defendants. Plaintiff contends that Desiderio was hired because Paterakis recommended him to Dandro and pressured her to hire him. Pl.Mem. Opp'n Summ.J. at 17–20. Even if the court accepts that Paterakis was involved, his involvement only adds a possible additional nondiscriminatory reason into the mixture: that Desiderio was hired because Paterakis recommended him to Dandro.

■ Hiring an applicant because he was referred by a supervisor or even because he was acquainted with someone in the inter-

**3.** There is substantial evidence that Dandro had the final decision about who to interview and who to hire for the CSR vacancy. Dandro Dep. at 242–43; Nicholson Dep. at 30. The fact that the final decision maker and both interviewers are members of the plaintiff's protected class (women) weakens any possible inference of discrimination. This reasoning has been applied to weaken the inference of discrimination in sex, race, and age cases. *See, e.g., Rooks v. Girl Scouts of Chicago,* No. CIV.A. 95–3516, 1996 WL 459941, at *3 (7th Cir. Aug. 9, 1996) ("[T]here can be no compelling inference of age discrimination because [the decision maker] herself is also in the protected category."); *Marlow v. Office of Court Admin. of State of N.Y.,* 820 F.Supp. 753 (S.D.N.Y.1993), *aff'd,* 22 F.3d 1091 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 252, 130 L.Ed.2d 173 (1994) (pointing out that because some of the decision makers were members of the same protected age group as plaintiff, plaintiff's ability to raise an inference of discrimina-

tion was hampered); *Toliver v. Community Action Comm'n to Help the Economy, Inc.,* 613 F.Supp. 1070 (S.D.N.Y.1985), *aff'd,* 800 F.2d 1128 (2d Cir.), *cert. denied,* 479 U.S. 863, 107 S.Ct. 217, 93 L.Ed.2d 146 (1986) (holding that given the composition of the 11–person decision making board (6 were black and 3 were black men), inference raised by black male plaintiff that his termination was due to race and sex discrimination was implausible); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 1002 (5th Cir. 1996) (en banc) ("[In] a Title VII case alleging discrimination because of race, proof that all of the decision makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision."). However, the court recognizes that evidence of the decision makers' membership in the protected group is not dispositive as to whether discrimination took place. *See, e.g., Billingsley v. Jefferson County,* 953 F.2d 1351, 1352 (11th Cir.1992).

viewer's family does not constitute legal discrimination. *See Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1096 (6th Cir.1996) (finding that a charge of nepotism, if proven, does not constitute evidence of impermissible discrimination under Title VII); *Holder v. City of Raleigh,* 867 F.2d 823, 825–26 (4th Cir. 1989) ("Title VII does not authorize courts to declare unlawful every arbitrary and unfair employment decision. To hold that favoritism towards friends and relatives is *per se* violative of Title VII would be, in effect, to rewrite federal law. The list of impermissible considerations within the context of employment practice is both limited and specific ... We are not free to add our own considerations to the list."). Moreover, plaintiff does not allege that Paterakis engaged in any discriminatory conduct whatsoever on the basis of sex or age during the hiring process. For that reason, his involvement as a recommender of Desiderio's application not only fails to establish an inference of discrimination but is completely irrelevant to plaintiff's claims.

### c. Qualifications for the job

■ Plaintiff contends that defendants' reason for not hiring her is illegitimate because a jury could find that plaintiff was more qualified than Desiderio. Plaintiff alleges that the articulated reason for hiring Desiderio—that he was more experienced in the bakery industry—is pretextual because experience in the industry was not a baseline requirement for the job. *See* Pl.Mem.Opp'n Summ.J. at 34. Therefore, plaintiff reasons, if bakery experience drops from the equation, then plaintiff appears more qualified than Desiderio because she has had ten more years of general experience in sales. Plaintiff's argument is flawed for several reasons.

■ First, the existence of baseline requirements (i.e., general experience in sales/customer service) does not preclude an employer from considering additional, legitimate qualifications (i.e., specific experience in the bakery industry) and then deciding who is most capable of performing the job. Second, it is not this court's role to second-guess an employer's business judgment as to who is more qualified for the job. *See Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988). It is the perception of the decisionmaker that is relevant, not the plaintiff's perception of herself. *Smith v. Flax,* 618 F.2d 1062, 1065 (4th Cir.1980). The plaintiff's subjective belief that she was more qualified for the job does not create an issue of fact for the jury. *Grauer v. Federal Express Corp.,* 894 F.Supp. 330, 334 (W.D.Tenn. 1994), *aff'd,* 73 F.3d 361 (6th Cir.1996).

Second, defendants' contention that Desiderio was better-qualified is well-supported by the record. Although the plaintiff had worked in sales 10 years longer than Desiderio, Desiderio had recent, specific experience with the baked products sold by Northeast. Plaintiff's experience, on the other hand, was primarily in the soft drink industry. She only had one year of experience in the bakery industry, while working for Beatrice–Hunt Wesson from 1979 to 1980. Although she had been labeled a "bakery expert" while at Beatrice–Hunt Wesson, her "expertise" resulted from attending one bakery course and training in a retail bakery for less than a month. Dungee Dep. at 11, 216. Thus, plaintiff's experience in the bakery industry was shorter and much less recent than Desiderio's. In sum, plaintiff's assertions that she was more qualified amount to nothing more than an attempt to displace the defendants' business judgment with her own, and is thus is insufficient to overcome summary judgment.[4]

---

4. The remainder of plaintiff's assertions are purely conclusory and do not raise material issues for the jury. First, plaintiff alleges that Dandro intentionally selected younger applicants to interview. Pl.Mem.Opp'n Summ.J. at 37. Plaintiff maintains that the majority of the resumes selected by Dandro contained dates from which Dandro could tell that the applicants were under 40. Nevertheless, plaintiff's own situation belies that assertion. Dandro selected plaintiff's resume, which, conspicuously, contained no birth date or any other information from which age could be calculated, and that of Mr. Elliott Stein, whose birth date indicated that he was 44 years old, a member of the protected class under the NJLAD and the ADEA. Thus, the evidence, by plaintiff's own admission, reveals that the selection process did *not* involve considering her age as there was no way to discern how old she was from her resume. Second, plaintiff contends that the issue of whether Dandro led plaintiff to believe she was hired at the interview is

#### d. Cover letter notations

Plaintiff claims that the question of whether she submitted a cover letter with her resume raises an issue of fact for the jury that is relevant to a finding of discrimination. Defendants claim that plaintiff never sent a cover letter to Dandro. Dandro Dep. 168:11–22. Plaintiff alleges that the letter was sent. Counsel for plaintiff questioned Donald Mann, Director of Human Resources, about whether the letter was destroyed. Mann Dep. at 83:21–84:9. Plaintiff believes that the letter is important because Dandro admitted that she often made notations on the cover letters. Plaintiff alleges that those notations—such as "mid-twenties"—referred to the candidates' ages rather than salary. Dandro testified that the numbers refer to the candidates' desired salary ranges. Regardless, plaintiff has neither produced a copy of her cover letter nor shown any correlation between the notations and age. Curiously, plaintiff points out that an applicant whose letter was marked "mid-twenties" was in fact 30 years old. Pl.Mem.Opp'n Summ.J. at 13–14. Moreover, plaintiff offers no evidence to show that the notations were later used to make the hiring decision. In sum, even if the court assumes that plaintiff mailed a cover letter, there is no proof of what notes might have been made on the letter. Mere speculation as to what might have been written on plaintiff's cover letter, if such existed, raises neither an inference of discrimination nor an issue of material fact for the jury.

#### e. College degree requirement

Finally, the plaintiff alleges that the question of whether a college degree was required for the position is a triable issue of fact for the jury. Plaintiff claims that the requirement was included in the classified advertisement to attract younger people, who are more likely to have college degrees. This argument is flawed for several reasons. First, Dandro admitted that the advertisement was mistaken and should have read that the job required 2–3 years of customer service experience "and/or a bachelor's degree." Dandro Dep. at 88:12–89:8. Second, neither plaintiff nor Desiderio possess such a degree, and they were both selected for the interview. Thus, whether or not the degree was required is immaterial to the employment decision.

Plaintiff was in contact with defendants about the job from the time she was interviewed, on August 12, 1996, until she received the letter from Dandro of August 30, 1996. Plaintiff concedes that she was not treated discriminatorily during the pre-interview contacts or during the interview itself. Dungee Dep. at 49:25–50:12. Plaintiff testified that it was solely the language in the post-interview letter of August 30 that led her to believe that Dandro considered age and sex when making her decision. Dungee Dep. at 140:15–141:5; 286:8–23. As discussed above, the letter's contents are insufficient to raise an inference of discrimination to defeat summary judgment. Moreover, plaintiff provides no additional relevant evidence to consider in conjunction with the letter. Because Ms. Dungee has failed to proffer any relevant evidence calling into question the nonpretextual reason offered by defendants, summary judgment will be granted in favor of defendants.

### B. Mixed Motive

#### 1. *Generally*

Plaintiff argues in the alternative that this a mixed motive case that should qualify for the burden-shifting framework under *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). If applicable, *Price Waterhouse* shifts the burden of persuasion to the employer to show that the same employment decision would have been made regardless of the illegitimate motive. *Armbruster,* 32 F.3d at 778. The *Price Waterhouse* framework applies in both Title VII and ADEA cases. *Armbruster,* 32 F.3d at 777 & n. 10. Because age and sex discrimination claims under NJLAD are analyzed using Title VII and ADEA standards, the *Price Waterhouse* bur-

---

one for the jury. This issue is irrelevant. Because plaintiff has chosen to pursue only discrimination claims, rather than contract, misrep-

resentation or estoppel theories, any dispute about whether she was actually offered the position at the interview is no longer material.

den-shifting scheme would be equally applicable. *See, e.g., Maidenbaum v. Bally's Park Place,* 870 F.Supp. 1254 (D.N.J.1994) (applying the mixed motive analysis to an age claim under the NJLAD).

 To establish a mixed motives case, plaintiffs must demonstrate that discrimination was a motivating a factor in the employment decision. 42 U.S.C. § 2000e–2(m). The evidence required to make this showing has been labeled "direct" evidence and must show that "decisionmakers place substantial reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1805 (O'Connor, J., concurring). The Third Circuit has found that the evidence "must directly reflect a discriminatory or retaliatory animus on the part of a person involved in the decisionmaking process." *Armbruster,* 32 F.3d at 778. Circumstantial evidence may satisfy this evidentiary burden if it is tied directly to the alleged discriminatory animus. *Ostrowski v. Atlantic Mut. Ins. Co.,* 968 F.2d 171, 183 (2d Cir.1992). The *Price Waterhouse* framework assumes that the evidence produced by the plaintiff is "so revealing of discriminatory animus" that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production to the defendant. *Armbruster,* 32 F.3d at 778.

### 2. *Application*

 Plaintiff alleges that the letter of August 30, 1994, stating that the candidate hired for the job was a "young man" constitutes sufficient "direct" evidence to trigger the application of *Price Waterhouse.* Pl. Mem.Opp'n Summ.J. at 43. Plaintiffs contend that this language demonstrates that Dandro was thinking about the age and sex of the candidates when she wrote the letter to the plaintiff. *See id.* This letter, as discussed above, was insufficient to satisfy the plaintiff's burden under the pretext theory. If the evidence was too weak to show pretext, it is surely does not qualify as "direct" evidence sufficient to trigger *Price Waterhouse*'s burden-shifting scheme. Before the plaintiff can reap the benefits of the burden of persuasion shifting to the defendants,

*Price Waterhouse* requires the plaintiff to make a strong showing of the existence of discriminatory animus. *See Armbruster,* 32 F.3d at 778.

Moreover, even if Dandro was considering age and sex when she wrote the letter, that fact is irrelevant. The letter in question was written two weeks after the employment decision was made. *Price Waterhouse* is concerned with the employer's motivations at the time the decision was made, not two weeks later. Plaintiff asserts that Mann and Paterakis were concerned about the letter because they thought it might appear discriminatory. *Id.* Mere concerns by non-decisionmakers, however, do not amount to proof that the decision was motivated by discriminatory animus.

Thus, even if the court were to view this case as one involving mixed motives, the result would not change. The decision to grant summary judgment in this case is based on the absence of evidence that defendants were motivated either in whole, or in part, by discriminatory intent.

## IV. CONCLUSION

Plaintiff has failed to satisfy her burden of proof either on a pretext or a mixed motives theory of sex and age discrimination. Plaintiff's meager evidence has fallen far short of establishing pretext or "direct" evidence of discrimination. To the extent that certain historical facts may be in dispute, resolution of those facts in favor of the plaintiff would not provide evidence permitting an inference of discrimination. Summary judgment will therefore be granted in favor of defendants. An appropriate order will be entered.